Date signed September 30, 2009



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In Re: | * | |
| Perver Lee Taylor, | * | Case No.   07-18102-TJC |
| | * | Chapter   7 |
| | * | |
| Debtor. | * | |
| ************************************* | * | |
| Helen Cheeks, | * | |
| | * | |
| | * | |
| Plaintiff. | * | |
| vs. | * | Adversary   No. 07-1003-TJC |
| Perver Lee Taylor, | * | |
| | * | |
| | * | |
| Defendant. | * | |

### MEMORANDUM OF DECISION

This action arises out of a complaint to determine dischargeability of a debt allegedly owed by Defendant Perver Lee Taylor (the "Defendant") to Plaintiff Helen Cheeks (the "Plaintiff").  The Court held a trial on the complaint and, after both parties submitted post-trial memoranda, heard closing arguments on March 13, 2009.  For the reasons set forth in this memorandum of decision, the Court will enter judgment in favor of Plaintiff and rule that a debt to Plaintiff in the amount of

$34,000 arising out of Defendant's fraud is nondischargeable.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(I).  The following constitutes the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

On or about January 26, 2004, Defendant mailed a solicitation letter to Plaintiff offering his services as a real estate investor. (Pl. Exh. 3).  Defendant became aware of Plaintiff and her financial situation because a foreclosure proceeding was pending against Plaintiff's real property, known as 824 Alabaster Court, Capitol Heights, Maryland (the "Alabaster Property"). (Pl. Exh. 4).

Plaintiff met Defendant at the Alabaster Property in late January 2004.[1] (Def. Exh.6 [2]).  At that meeting, Defendant referred Plaintiff to a bankruptcy lawyer, Brian Williams, who could help her file bankruptcy.  (Def. Exh. 6).  Defendant also advised the Plaintiff to call him back after the bankruptcy case was over.  The Court takes judicial notice that on February 4, 2004, Plaintiff filed for chapter 13 relief.  (Md. Bankr. Case No. 04-12708-PM).

During the bankruptcy case, Plaintiff and Defendant communicated on two occasions.

---

[1] At that time, Plaintiff and her family were not living at the Alabaster Property because of the pending foreclosure action.

[2] Defendant provided the court with three paper copies of his witness and exhibit list and exhibits on December 9, 2008, as required by Bankr. L. R. 7016-1(c) and by the scheduling order entered on May 9, 2008.  However, Defendant immediately thereafter filed electronically a supplement to his exhibits.  Specifically, Defendant added more pages, which included Plaintiff's answers to Defendant's interrogatories, to "Exh. 6" titled as "Plaintiff's Answers To Defendant's Interrogatories."  Defendant's counsel later described his supplement to the exhibits at the final pre-trial hearing held on January 14, 2009.  Defendant's counsel informed the court that he would provide the court and Plaintiff with paper copies of the supplement.  The supplement to "Exh. 6" was incorporated into the record, when Defendant moved during trial for admission of Defendant's exhibits without objection.  The Court granted Defendant's request.  All references to "Def. Exh. 6" refer to the full supplement made by Defendant.

Defendant ordered an appraisal of the Alabaster Property, which was performed on June 25, 2004. (Def. Exh. 4, 6).  One month prior to the dismissal of the bankruptcy case, a document was purportedly executed by Plaintiff granting Germaine Hart ("Hart"), Defendant's brother-in-law, the authority to act on Plaintiff's behalf to sell and convey title of the Alabaster Property to Defendant. (Def. Exh. 1).

Plaintiff voluntarily dismissed her bankruptcy case on July 13, 2004[3] because she could not afford the chapter 13 monthly plan payments in addition to her mortgage.[4]  Shortly thereafter, on or before July 16, 2004, Lawrence Elliott ("Elliott") came to Plaintiff's job training location in the Ronald Reagan Building in Washington D.C. to have Plaintiff sign documents. (Def. Exh. 6).  Elliot introduced himself as Defendant's attorney.  (Def. Exh. 6).  Plaintiff was informed that Defendant was a lender and that Defendant would be put on the deed as a "third-party" and would be removed from the deed after Plaintiff made one full year of mortgage payments.  (Def. Exh. 6).  Plaintiff agreed to this type of arrangement because she believed that if she kept her mortgage current for the year, Defendant's name would be removed from the deed.

There is no dispute that on or about July 16, 2004, a deed was signed that transferred the Alabaster Property from Plaintiff to Defendant. (Pl. Exh. 2, 4).  Plaintiff testified that the signature on the deed is a forgery.  Defendant disputes this, but offered no evidence to prove or disprove whether the Plaintiff's signature on the deed is authentic.  The signature on the deed is "Helen C. Cheeks" while Plaintiff's middle initial is "T."  In order to find that the Plaintiff signed the deed, the Court would have to find also that Plaintiff signed her own name incorrectly, which is highly implausible.  The Court finds that the Plaintiff's signature on the deed was a forgery.

---

[3] Md. Bankr. Case No. 04-12708-PM, Docket No. 24.

[4] Plaintiff testified to making mortgage payments in April and May.

A settlement statement (Rev. HUD-1) was also purportedly signed by Plaintiff and Defendant for the sale of the Alabaster Property to Defendant for the sum of $165,000. (Pl. Exh. 1). Defendant did not tender to Plaintiff any portion of the "sale" price of $165,000 for the Alabaster Property. (Pl. Exh. 4). Instead, Defendant obtained a loan to purchase the Alabaster Property under the pretense that it was to be his primary residence, although Defendant's real intent was to purchase the Alabaster Property as an investment property. Executive Title and Escrow L.L.C. provided a direct payoff of Plaintiff's existing deed of trust loan in the amount of $114,472.16, and that loan was paid. (Def. Exh. 5). An actual settlement meeting was never conducted between Plaintiff and Defendant. Instead, Hart signed documents on behalf of Plaintiff (Def. Exh. 1) and he signed the settlement statement as Plaintiff's "attorney in fact." (Def. Exh. 2).

Plaintiff continued to live at the Alabaster Property after the execution of the deed on July 16, 2004. The deed to the Alabaster Property was not recorded until November 8, 2004. (Pl. Exh. 4). Following what Plaintiff believed was a refinancing of the Alabaster Property, Plaintiff paid Defendant $1,000 on or about September 13, 2004. (Def. Exh. 3). Plaintiff testified during a deposition that she paid rent, but in interrogatories (Def. Exh. 6) and at trial Plaintiff explained that she understood her payment would apply to her mortgage.[5]

On October 4, 2004, Plaintiff learned for the first time that the Alabaster Property had been transferred. While Plaintiff was at work, a man arrived at the Alabaster Property and explained to Plaintiff's spouse that the house was sold to him by Defendant on October 3, 2004. (Def. Exh. 6). Upon further investigation by Plaintiff (Def. Exh. 6), she learned that the Alabaster Property had been transferred to Defendant in July 2004, and that her mortgage loan had been paid off by someone other than herself. (Def. Exh. 5).

---

[5] Plaintiff did not make any payments in the form of rent or mortgage during the months of June, July, or August 2004.

On October 21, 2004, Defendant filed an action in the District Court of Maryland for Prince George's County entitled "Complaint / Wrongful Detainer or Grantor in Possession" against Plaintiff. (Pl. Exh. 4).  From that period forward, Plaintiff received notices to vacate the property on a weekly basis.  Subsequent to receiving the notices to vacate, Plaintiff suffered headaches, lost weight, suffered stress, and had a mild heart attack on December 4, 2004. (Def. Exh. 6).  Plaintiff was hospitalized for one week. (Def. Exh. 6).

Finally, on December 31, 2004, Plaintiff vacated the property. (Def. Exh. 6).  Plaintiff testified that at the time her two sons, grandson, and spouse were living at the Alabaster Property.  Plaintiff moved out her bedroom furniture, living room furniture, and grandson's bedroom furniture from the Alabaster Property.  At some point in January 2005, Plaintiff returned to the Alabaster Property to retrieve the remainder of her possessions, but was unable to enter because the locks had been changed.  The remainder of Plaintiff's clothes and other belongings were locked inside the house, which included mattresses, dressers, two television sets, her clothes, her spouse's clothes, her grandson's clothes, toys, and a freezer.  Plaintiff testified that these possessions were worth over $20,000.  However, her Schedule C from her 2004 bankruptcy filing, filed under oath on March 24, 2004, stated that Plaintiff's personal possessions were valued at less that $2000 (not including her cars and a boat). (Md. Bankr. Case No. 04-12708-PM, Dkt. No. 1).  Plaintiff testified that she acquired many new possessions during the holiday season, but this was during a time when she was being evicted from her home.  Plaintiff testified that her sons' belongings remained at the Alabaster Property; however neither son is a party to this adversary proceeding and are not entitled to relief herein.

Defendant testified that when he took possession of the Alabaster Property in January 2005, the Alabaster Property was in deplorable condition although he offered no evidence of any improvements he made after gaining possession of the Alabaster Property.  Defendant sold the

property for $220,000 on February 3, 2005.

The Court takes judicial notice that on June 4, 2007, Defendant filed for chapter 7 relief (the "First Bankruptcy Case").[6] (Md. Bankr. Case No. 07-15096). In the First Bankruptcy Case, Defendant failed to list Plaintiff as a creditor or to list any pending court litigation. The First Bankruptcy Case was dismissed on June 20, 2007 for failure to complete required filings.

In the meantime, Doyle Neiman, Assistant State's Attorney for Prince George's County, began a criminal investigation of Defendant's involvement in the conveyance of the Alabaster Property. (Def. Exh. 6). Plaintiff also spoke to Calvin Wink, an investigator for the State's Attorney's Office for Prince George's County. (Def. Exh. 6). Criminal charges were brought against Defendant based on his involvement in the transfer of the Alabaster Property. Defendant pled guilty to a charge of aggregate theft over five hundred dollars (Md. Code Ann. Crim. Law § 7-104) in Case No. CT061852A, in the Circuit Court for Prince George's County. On or about July 30, 2007, Defendant paid the Plaintiff $40,475.32 (Def. Exh. 4) pursuant to a restitution order in the criminal case.

Defendant filed the instant chapter 7 bankruptcy case (Md. Bankr. Case. No. 07-18102) (the "Second Bankruptcy Case") on August 28, 2007. Defendant again failed to disclose that Plaintiff was a creditor, list Plaintiff in the creditor matrix, or disclose that Defendant recently made a restitution payment to Plaintiff as a result of a guilty plea in criminal court. (Md. Bankr. Case. No. 07-18102, Dkt. No. 1).

In the Second Bankruptcy Case, the deadline to file an objection to discharge or to establish the dischargeability of a debt was December 3, 2007. Plaintiff filed this adversary proceeding on

---

[6] Although the Court refers to this as the "First Bankruptcy Case," the Court also takes judicial notice that Defendant filed an even earlier bankruptcy case in 1996. That bankruptcy filing does not have any relevance to the instant case.

December 31, 2007, almost one month after the deadline.  Defendant was granted a discharge on January 16, 2008, subject to the resolution of this adversary proceeding concerning the dischargeability of Plaintiff's claim.

## CONCLUSIONS OF LAW

Plaintiff contends that Defendant committed a fraud and theft and caused willful and malicious injury by taking title to the Alabaster Property.  She contends that the Defendant is indebted to her as a result of his actions, and the debt is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6).[7]  Defendant filed an answer to the complaint denying almost all the allegations.  At the final pre-trial hearing, however, Defendant stipulated that he does not contest liability for fraud, but argued that he was not liable for damages claimed in the complaint.  Specifically, Defendant's counsel conceded that the real estate transaction that led to the guilty plea in state court was the same real estate transaction described in the complaint.  Defendant argues that the complaint is barred because it was untimely filed and because the statute of limitations expired.  The Defendant also contends that the restitution ordered by the state court and paid by Defendant made the Plaintiff whole, and therefore she is not entitled to further nondischargeable compensatory or punitive damages.

### A. Deadline to file nondischargeability complaint

Section 727 provides that a "discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter ..."  11 U.S.C. § 727.  However, an individual debt[8] can be nondischargeable if it falls within the exceptions

---

[7] Hereafter, all references to Title 11 of the United States Code shall be referred to simply by the word "section" or symbol "§".

[8] Debt is defined as liability on a claim.  11 U.S.C. § 101(12).  A claim is defined as, *inter alia*, a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

provided in § 523.  For example, certain types of debts are nondischargeable when the debtor does not provide notice to the creditor and an opportunity to timely file a proof of claim and request a determination of dischargeability of the debt.  11 U.S.C. § 523(a)(3); *In re Bearden*, 382 B.R. 911, 917 (Bkrtcy. D.S.C. 2008) (simplifying the language of § 523(a)(3)(A)).  Unscheduled debts, as described in § 523(a)(2), (4), or (6), are excepted from discharge if the creditor was not given the opportunity to file a proof of claim and timely request a determination of dischargeability. 11 U.S.C. § 523(a)(3)(B).

In contending that the complaint is untimely, Defendant relies on Fed. R. Bankr. P. 4007(c),[9] which governs the filing of nondischargeability actions and which states that "a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)."  However, this general rule does not apply to an action under § 523(a)(3)(B).  *See* 11 U.S.C. § 523(c)(1).  An action brought under § 523(a)(3)(B) specifically provides relief for those situations where the debtor failed to schedule a creditor in time to permit the creditor to timely file a proof of claim and request a determination of dischargeability for such debt described in § 523(a)(2),(4), or (6), unless the creditor had actual notice or knowledge of the case in time to take both of those actions.  An action brought under § 523(a)(3)(B) is not barred by time, and is not subject to the deadlines established by Rule 4007(c); rather it is governed by Rule 4007(b) and can be filed at any time.[10]

Thus if a creditor that has a type of debt described in § 523(a)(2), (4), or (6) is not listed on

---

secured, or unsecured." 11 U.S.C. § 101(5)(A).

[9] Hererinafter, all references to the Fed. R. Bankr. P. shall be referred to simply by the word "Rule".

[10] Rule 4007(b) provides that "[a] complaint other than under § 523(c) may be filed at any time."

the debtor's schedules but nevertheless has sufficient notice of the filing of the bankruptcy case in time to file a proof of claim and request a determination of dischargeability then the creditor's deadline to file a nondischargeability proceeding expires 60 days after the first date set for the meeting of creditors.  This is to "ensure the debtor a fresh start, if an unlisted creditor has notice or actual knowledge of a bankruptcy filing and fails to file a complaint within the deadline under Rule 4007."  *In re Bateman*, 254 B.R. 866, 870 (Bankr.D.Md. 2000).  If the creditor does not have notice of the filing of a bankruptcy case, then the creditor is not time-barred from filing the request for determination of dischargeability.  Notice or actual knowledge of a bankruptcy case is described as "knowledge of facts sufficient to apprise the creditor that a case was actually filed, and where the proceeding is pending." *In re Layman,* 131 B.R. 495 (M.D. Fla. 1991).

Here, the parties do not dispute that the deadline to file a nondischargeability action was December 3, 2007 and that Defendant failed to schedule or notify Plaintiff of Defendant's bankruptcy filings. (Dkt. No. 6).  Accordingly, unless Plaintiff had sufficient notice of the bankruptcy case in time to permit her to request by December 3, 2007 a determination of dischargeability for the debt under § 523(a)(2),(4), or (6), the complaint is not barred under Rule 4007(c).[11]

Defendant argues that Plaintiff has the burden of proof to explain why Plaintiff did not timely file a complaint or move to extend the deadline for the bar date.  Defendant further contends that allegations in the complaint lead to the inference that Plaintiff had timely notice of the case.  Specifically, Defendant relies on the following statement in the complaint:

---

[11]Section 523(b)(3)(B) is written in the conjunctive: the creditor must learn of the case in time to timely file both a proof of claim and a request for determination of dischargeability. Here, the bar date to file a proof of claim was January 1, 2008.  Accordingly, the issue before the Court is whether the Plaintiff had notice of the case in time to file a request for determination of dischargeability by December 3, 2007.

> 5.    Cheeks counsel learned of Taylor's [sic] [bankruptcy filing] by
> happenstance in December, 2007 when he was reviewing the Court's hearing
> docket to confirm that a hearing in a case was scheduled and while scrolling
> through the docket he noticed a reference to Taylor's case.

(Compl., ¶5).  Defendant contends that because Plaintiff admits her counsel had notice of the case

sometime in December, 2007, it was incumbent on her to establish at trial that she did not have

notice sufficiently in time to file a complaint to determine dischargeability by the December 3, 2007

deadline.  The Defendant contends, therefore, that the complaint was untimely.  The Court rejects

these contentions for several reasons.

First, the Court takes judicial notice that December 3, 2007 was a Monday.  Treating

Paragraph 5 of the complaint as an admission, the most it establishes is that Plaintiff had notice of the

case sometime in December, 2007.[12]  Defendant contends that the Court cannot rule out the inference

that the Plaintiff had notice of the case in time to file a complaint by the bar date.  But even if the

burden were on the Plaintiff to establish that her notice was not in sufficient time to file a complaint

to determine dischargeability, the Court concludes she met that burden by the allegation in Paragraph

5.  At the most Paragraph 5 could establish insofar as Defendant's contention is concerned is that the

Plaintiff had notice of the case on Saturday, December 1, 2007, three days  - and one business day  -

before the deadline to file a request for a determination of dischargeability.

A leading case addressing the determination of a reasonable notice period under § 523(b)(3)

is *Manufacturers v. Dewalt* (*In re Dewalt*), 961 F.2d 848 (9th Cir. 1992).  There the Ninth Circuit

reversed the bankruptcy court's determination that an unscheduled creditor had sufficient time to file

a motion to extend the period to file a dischargeability action when the creditor learned of the

bankruptcy filing just seven days before the deadline to file the action.  The bankruptcy court ruled,

---

[12]At argument and in the Plaintiff's post-trial brief, Plaintiff's counsel stated that he
learned of the Defendant's case as described in Paragraph 5 of the complaint well after the
December 3, 2007 bar date.  This statement, of course, is not evidence.

therefore, that the creditor's complaint filed after the bar date was untimely.

Based on the specific language of § 523(b)(3) and policy considerations, the Ninth Circuit first ruled that the statute does not impose an obligation on the creditor to file immediately a motion to extend the deadline. Rather than obligating a creditor to file a motion to extend the deadline that may serve no purpose, the "creditor should have time to review the merits and file a complaint of nondischargeability only if it is justified." *Id.* at 851. The Court then held that the 30 day notice requirement of Rule 4007(c) "provides a guide to the minimum time within which it is reasonable to expect a creditor to act under penalty of default." *Id.*

While not all courts have adopted the 30 day minimum standard of *Dewalt*, no court has held that one business day is sufficient time to file a complaint to determine dischargeability of a debt under § 523(b)(3). *See e.g.*, *In re Bateman*, 254 B.R. 866 (Bankr.D.Md. 2000) (finding that 26 days was sufficient time to file a timely request for determination of dischargeability or requesting an extension of time.)[13] The Court concludes that Plaintiff did not have notice of the Defendant's bankruptcy case in time to "timely request . . a determination of dischargeability..." § 523(b)(3)(B). The Court concludes, therefore, that the complaint was not time-barred by Bankruptcy Rule 4007(c).

Second, if there were any doubt that the Plaintiff's notice of the case was not in sufficient time to file the complaint -- and the Court concludes there is none -- the Court would not rule that the complaint was time-barred. Rather the Court would either conclude that the Defendant waived this

---

[13]Other courts holding that a notice period of less than 30 days include: *Employers Workers' Compensation Ass'n v. Kelley* (*In re Kelley*), 194 B.R. 258 (Bankr.N.D.okla. 1996) (eleven days actual notice was sufficient time to file a complaint or motion to extend), *Wood v. Jasperson* (*In re Jasperson* ), 116 B.R. 740 (Bankr.S.D.Cal. 1990) (three days notice was sufficient time to file a complaint or motion to extend - but the holding was effectively overruled by *Dewalt*); *Grossie v. Sam*, 894 F.2d 778 (5th Cir. 1990) (eighteen days notice was sufficient time to file a complaint or motion to extend). None of these cases support a finding that one business day is sufficient.

defense or would reopen the record to allow Plaintiff to introduce evidence of the actual date that her

counsel obtained the knowledge of the case.  Defendant raised the issue of whether Plaintiff had

timely notice of the case under § 523(b)(3) for the first time after Plaintiff closed her case.

Defendant did not raise this defense in his answer and did not include the defense in his pretrial

statement.  But Defendant was required to include in his pretrial statement "a brief statement of facts

that the party proposes to prove in support of a claim or defense, together with a statement of legal

theories and citations of authorities."   Bankr. Local R. 7016-1(b).  Thus the Court would either

reopen the record to allow the Plaintiff to establish the actual date on which her counsel obtained

notice of the case or would conclude that the Defendant waived the argument.

### B. Maryland State Statute of Limitations

Defendant contends that the complaint is barred by the Maryland three year state statute of

limitations for fraud. *Id*.[14]  Defendant contends that a cause of action against him accrued when the

deed was executed on July 16, 2004, and therefore had run by the date he filed the Second

Bankruptcy Case on August 28, 2007.[15]  This Court disagrees.

In support of his argument, Defendant cites to *Crowder v. Master Financial, Inc.*, 933 A.2d

905, 921 (Md. App. 2007) (quoting *Poffensberger v. Risser*, 431 A.2d 677, 681 (Md. 1981)), which

explains that

> [A] cause of action accrues only when the claimant knows or should know of the
> wrong... A claimant reasonably should know of a wrong if the claimant has
> "knowledge of circumstances which ought to have put a person of ordinary

---

[14] "A civil action at law shall be filed within three years from the date it accrues unless
another provision of the Code provides a different period of time within which an action shall be
commenced." Md. Code Ann., Cts. & Jud. Proc., § 5-101.

[15] There is no dispute that under § 108 of the Bankruptcy Code, pending claims against
the Defendant were tolled upon the filing of the Second Bankruptcy Case. 11 U.S.C. § 108(c).
Accordingly, the Plaintiff's cause of action for fraud is not time barred as long as it was not time-
barred as of the petition date of the Second Bankruptcy Case, August 28, 2007.

prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.

Defendant contends that Plaintiff knew or should have known of the fraud on the date she signed the deed conveying the Alabaster Property to Defendant. However, the Court has found that the Plaintiff did not sign the deed and her signature was a forgery.[16] Accordingly, the statute of limitations did not begin to run upon the execution of the deed on July 16, 2004.

Moreover, the "Court of Appeals adopted the discovery rule in recognition of 'the inherent unfairness of 'charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury.'" *Id.* at 921. "It is universally accepted that where relief is sought in equity on the ground of fraud, and the ignorance of the fraud was produced by affirmative acts of the defendant in concealing the facts from the plaintiff, the Statute of Limitations will not bar relief if the suit is brought within the proper time after discovery of the fraud." *Piper v. Jenkins*, 207 Md. 308, 315 (Md. 1955).

The Court finds that Plaintiff was unaware of the July, 2004 deed to the Defendant at the time the deed was executed. The Court finds that the Plaintiff discovered on October 4, 2004 that the Alabaster Property had been transferred. Accordingly, the statute of limitations began to run from Plaintiff's discovery of the fraud on October 4, 2004. Therefore, the three year limitation period had not expired by the date of the Second Bankruptcy Case, and Plaintiff's fraud claim is not time-barred.

### C. Nondischargeability for Larceny

To succeed on the merits of her cause of action, Plaintiff must prove by a preponderance of

---

[16] The deed was not recorded until November 8, 2004.

the evidence that the debt owed results from fraud, larceny, or willful and malicious injury.  11

U.S.C. § 523(a)(2),(4), and(6); *see Grogan v. Garner,* 498 U.S. 279 (1991).  In Count I of the

complaint, Plaintiff seeks a determination that the debt owed to her is nondischargeable under 11

U.S.C. § 523(a)(2) and (a)(6).  Nevertheless, as discussed at the final pre-trial hearing that §

523(a)(4) is also applicable to this case, which excepts from discharge debts that result from

larceny.

"A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not

discharge an individual debtor from any debt ... (4) for fraud or defalcation while acting in a

fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  The common law of

Maryland defines larceny or theft as willful or knowing unauthorized control over property with the

intent to deprive the owner of the property.  Md. Code Ann., Crim. Law § 7-104(a)(1).  The

definition of property includes real property.  Md. Code Ann., Crim. Law § 7-101(i)(2)(i).  These

elements are practically identical to the federal elements of larceny, which defines larceny as a

felonious taking of another's property with intent to convert it or deprive the owner of the same.  4

Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 523.10[2] (15th ed. 2005).

Applying the principle of collateral estoppel, a bankruptcy court does not have to relitigate a

matter regarding whether a defendant committed larceny.  In Maryland, "when an issue of fact or

law is actually litigated and determined by a valid and final judgment, and the determination is

essential to the judgment, the determination is conclusive in a subsequent action between the

parties, whether on the same or a different claim." *Brown v. Mayor,* 892 A.2d 1173 (Md. App.

2006) (quoting *Murray Int'l Freight Corp. v. Graham,* 555 A.2d 502 (Md. 1989)).  Applying the

principle of collateral estoppel in a bankruptcy context, in the case of *Combs v. Richardson*, 838

F.2d 112, 115 (4th Cir. 1988), the Fourth Circuit set out the test for applying collateral estoppel in

dischargeability proceedings.  *Id.*  For collateral estoppel to apply the following must be met: (1)

-14-

the issue sought to be precluded was the same as that involved in the prior action, (2) that the issue was actually litigated, (3) it was determined by a valid and final judgment, and (4) the determination was essential to the prior judgment. *Id.* (quoting *Matter of Ross*, 602 F.2d 604, 607-08 (3rd Cir. 1979)).  Both Maryland and the Fourth Circuit similarly put to use the principle of collateral estoppel.

Collateral estoppel principles apply in discharge exceptions and a guilty finding may be used as conclusive proof that a nondischargeable obligation exists.  *Grogan*, 498 U.S. at 285.  If the previous record establishes liability based on identical facts and issues alleged in the bankruptcy case, then the prior judgment should be given preclusive effect in making a determination under federal bankruptcy law.  *In re Jardula*, 122 B.R. 649, 654 (Bkrtcy. E.D.N.Y. 1990).  A criminal conviction whether by jury or by a guilty plea constitutes estoppel in subsequent civil proceedings. *Id.*

Therefore, the prior state criminal action in which Defendant pled guilty collaterally estops Defendant to relitigate whether he committed larceny.  There is no dispute that the transaction described in the complaint is the same transaction underlying the state theft charge against Defendant.  Defendant pled guilty to theft on the underlying real estate transaction and was ordered to pay criminal restitution to Plaintiff.  Accordingly, any debt from Defendant to Plaintiff arising out of Defendant's larceny is excepted from discharge under § 523(a)(4).

### D.  Nondischargeability for fraud

The Court finds that any debt due is also nondischargeable under § 523(a)(2).  Although the complaint does not specify the subsection under which relief is requested, it does state that the debt is nondischargeable if it arises out of fraud. (Compl., ¶4).  Section 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1128(a), 1228(b), or 1328(b) of this title
    does not discharge an individual debtor from any debt -
        (2) for money, property, services, or an extension, renewal, or refinancing

-15-

> of credit, to the extent obtained, by -
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...

11 U.S.C. § 523(a)(2)(A).  Actual fraud is defined as "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another-something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *In re Marino*, 139 B.R. 380, 383 (Bkrtcy.D.Md. 1992) (quoting Collier on Bankruptcy, ¶ 523-09, 523-59-523-61 (4th ed. 1968)).

Here, the Defendant obtained title to the Alabaster Property by fraud.  The deed that transferred the property to him was a forgery.  He never paid the Plaintiff any portion of the $165,000 alleged sale price until he was required to do so under an order of criminal restitution. Accordingly, any debt from the Defendant to the Plaintiff arising out of the Defendant's fraud is excepted from discharge under § 523(a)(2).[17]

*F. The Amount of the Debt.*

Plaintiff contends that the Court should  award her damages against the Defendant for (1) $20,000 for her personal property that was lost after she moved out of the Alabaster Property; (2) damages for the loss of the Alabaster Property; (3) emotional distress damages; and (4) punitive damages.  The Court will address each in turn.

The Court will not award damages for loss of Plaintiff's personal property.  She testified that she moved most of her belongings out of the Alabaster Proeprty in December, 2004, but left some behind. When Plaintiff went back to get them in January, 2005, she was locked out.  But she had an opportunity to remove all of her belongings and she offered no explanation as to why she didn't take

---

[17] Because the Court finds the debt is excepted from discharge under § 523(a)(2) and (4), the Court need not address Plaintiff's contentions under § 523(a)(6).

all of them when she had the chance.[18]

The Court will award damages for the loss of the Alabaster Property in the amount of $34,000. David Martin, a certified real estate appraiser, testified that he appraised the Alabaster Property as of July 16, 2004 in "as is" condition. He testified that the value of the Alabster Property as of that date was $199,000. Mr. Martin has 20 years experience appraising residential real estate. He certified that his appraisal complies with the Uniform Standards of Professional Appraisal Practice. The Court accepts Mr. Martin's valuation of the Alabaster Property as of July 16, 2004.

As stated above, the Defendant previously paid the Plaintiff $40,475.32 pursuant to a restitution order in the criminal case. That amount was based on the $165,000 alleged "sale" price less the liens against the Alabaster Property and less other costs. The Defendant contends that the Plaintiff is entitled to no additional damages because the Plaintiff has been made whole based on a value of $165,000. But the "sale" price was the result of Defendant's fraud. The Court does not accept that the "sale" price was the result of an arm's length negotiation or represented the value of the Alabaster Property as agreed upon between the Plaintiff and the Defendant. The Court also finds that it was not the market value of the Alabaster Property as of July, 2004.

However, the Court agrees with the Defendant, and the Plaintiff does not seriously dispute, that the Plaintiff has been made whole up to a value of $165,000. The Court therefore sets the amount of the Defendant's debt to Plaintiff at $34,000, calculated as $199,000 (the value of the Alabaster Property as of the date of the deed) minus $165,000 (the amount as to which the Plaintiff has previously been made whole.

---

[18] In any event, in her Schedule C from her 2004 bankruptcy filing, filed under oath on March 24, 2004, Plaintiff stated that the total value of all of her personal property was less than $2000 (not including cars and a boat). (Md. Bankr. Case No. 04-12708-PM, Dkt. No. 1). The value of the items she contends remained in the Alabster Property - some clothes, mattresses and television sets - are valued at less than $500.

-17-

Finally, the Court concludes that Plaintiff has not met her burden of establishing that she is entitled to emotional distress damages or punitive damages as a matter of fact or law.

CONCLUSION

For the foregoing reasons, the Court will enter a nondischargeable judgement against Defendant in favor of Plaintiff in the amount of $34,000.


cc:     Helen Cheeks
        733 Princeton PL NW
        Washington DC, DC 20010

        Scott C. Borison
        5500 Buckeystown Pike
        Frederick, MD 21703

        Perver Lee Taylor
        2100 Overton Drive
        Forestville, MD 20747

        Jude Edward Wikramanayake
        1110 Bonifant Street
        Suite 510
        Silver Spring, MD 20910

        Steven H Greenfeld
        Cohen, Baldinger & Greenfeld, LLC
        7910 Woodmont Avenue
        Suite 1103
        Bethesda, MD 20814

**End of Memorandum**